**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | Case No. 10-40351-MSH |
| AARON V. WASHINGTON | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| AARON V. WASHINGTON | ) | |
| | ) | |
| Plaintiff | ) | Adversary Proceeding |
| | ) | No. 10-4120 |
| v. | ) | |
| | ) | |
| CLINTON SAVINGS BANK | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**MEMORANDUM OF DECISION ON (i) DEFENDANT'S MOTION FOR SUMMARY**
**JUDGMENT, (ii) DEBTOR'S MOTION TO AMEND PLAN, (iii) DEBTOR'S**
**OBJECTION TO CLAIM OF CLINTON SAVINGS BANK, AND (iv) MOTION OF**
**CLINTON SAVINGS BANK FOR RELIEF FROM STAY**

Before me are (i) the defendant Clinton Savings Bank's motion for summary judgment

seeking dismissal of the three-count complaint in this adversary proceeding, (ii) the motion of the

debtor, who is the plaintiff in the adversary proceeding, to amend his Chapter 13 plan in the main

case and (iii) the debtor's objection to the bank's proof of claim.   Each matter is opposed and

because the issues are identical, this memorandum will address them all.

**Background**

In 2006 the debtor, Aaron Washington, and his wife, Monica DeFalco, obtained a loan of

$536,000 from Clinton Savings Bank to build a house on property they owned in Lunenburg,

Massachusetts.   They signed a note payable to the bank and secured their obligation by granting

1

the bank a first mortgage on the property.   Mr. Washington and his wife also executed a

construction loan agreement pursuant to which $333,500 of the loan proceeds was designated as

construction funds.   The construction loan agreement provided for the incremental disbursement

of funds based on construction benchmarks.   For example, one percent (1%) of the construction

loan was allocated to "Steps, Driveway, & Landscaping" and five percent (5%) was designated as

a holdback to be disbursed upon completion of the entire project.   According to the affidavit of

Joan E. Moran, a bank vice president, Mr. Washington never completed the landscaping of the

property.   According to the Moran affidavit, while this entitled the bank to retain the full 5%

completion holdback ($16,675) plus the 1% holdback for landscaping ($3,335), the bank withheld,

and continues to hold, only $12,000 as "adequate security for completion."   Ms. Moran's affidavit

states that Mr. Washington has never requested an inspection of the landscaping or disbursement

of the $12,000 holdback.   According to Mr. Washington's affidavit, construction of his home was

more expensive and took longer than anticipated.   He states in his affidavit that he made demand

on the bank for the release of the remaining construction funds.   Although the house is not

complete within the meaning of the construction loan agreement, Mr. Washington and his family

live there.

The construction loan agreement calls for the house to be completed within the

"Construction Period" which the agreement does not define.   However, the promissory note

signed by Mr. Washington and Ms. DeFalco contemporaneously with the construction loan

agreement states that the construction period runs from January 1, 2007 through December 31,

2007.   The Moran affidavit implies that the construction loan would become permanent at the

end of the construction period without any further action on the part of the bank or the borrowers.

Specifically Ms. Moran avers that she was involved in the design of the loan product represented

by Mr. Washington's loan which was called a construction/permanent loan and that the "purpose

of the construction/permanent loan is that only one (1) closing would occur, saving the Borrower

the time and expense of a second closing."   By letter dated December 31, 2007, Mr. Washington

on behalf of himself and his wife requested an extension of the construction loan noting that they

would need "approximately another 120 days to complete the house."   A handwritten notation

signed by "J Moran" on the December 31, 2007 letter states "OK 6 month extension until 6/1/08."[1]

On January 29, 2010 Mr. Washington filed his voluntary petition under Chapter 13 of the

Bankruptcy Code, 11 U.S.C. §§ 101-1532, commencing the main case.   Mr. Washington did not

make any post-petition mortgage payments to the bank and on April 12, 2010 the bank moved for

relief from stay pursuant to Bankruptcy Code § 362(d)(1) and (2).   Mr. Washington opposed the

motion for relief stating he was "reviewing" the loan documentation for possible violations of the

federal Truth in Lending Act, 15 U.S.C. §§ 1601–1667e, ("TILA") and the Massachusetts

Consumer Credit Cost Disclosure Act, Mass. Gen. Laws ch. 140D, ("MCCCDA"), and their

respective regulations.   Subsequently Mr. Washington filed an objection to the bank's proof of

claim alleging that the bank had breached its agreement to make a loan to Mr. Washington by

---

[1] In its Reply Memorandum, the bank represented that the loan became permanent as of October 1, 2008.   In his complaint, Mr. Washington alleges that the bank breached the terms of the note by "unilaterally . . . c hang[ing] the amount loaned to the Plaintiff to the sum of $524,000.00 without further disclosure to the Plaintiff," also suggesting that the loan was converted to a permanent loan in the amount of the outstanding principal balance amount of the loan.   The precise date of the conversion of the construction loan to a permanent one is not relevant to or dispositive of any of the issues before me.

refusing to advance all of the construction funds and challenging the bank's accounting of loan

disbursements and charges.[2]

Mr. Washington is up to his fifth amended plan without achieving confirmation.   The fifth

amended plan states that Mr. Washington objects to the bank's claim and rescinds the note.   The

plan proposes to pay the bank nothing.   The bank, not surprisingly, objected.   On August 31,

2010, the day of the hearings on the bank's motion for relief from stay and Mr. Washington's

objection to the bank's claim, Mr. Washington commenced this adversary proceeding seeking to

rescind the transaction with the bank pursuant to § 10 of the MCCCDA, § 1635(a) of TILA and the

regulations promulgated under each.   The bank seeks summary judgment on the grounds that

rescission is not available to Mr. Washington and even if it were, he would be required to tender

the loan proceeds to the bank.[3]

Mr. Washington's affidavit, which contains irrelevant references to the lending and

foreclosure practices of the mortgage industry in general and broad accusations, based solely upon

information and belief, of the bank's engaging in predatory lending practices with respect to

"purchasers and/or owners of real property situated in Worcester County,"[4] states that he was

---

[2] The specific relief sought by Mr. Washington in the objection is unclear.   He alleges in the
objection that the bank breached its agreement to lend by not advancing all of the loan proceeds,
which presumably refers to the $12,000 holdback.   He also challenges the bank's accounting,
including late charges and escrow balances, but offers no specific examples of how the accounting
is inaccurate.

[3] The bank did not submit a statement of uncontested facts as required by L.R., D. Mass. 56.1,
made applicable by MLBR 7056-1.   I will consider the motion despite this omission.

[4] The bank filed a motion to strike Mr. Washington's affidavit which I denied stating that I would
consider the substantive issues raised in the motion to strike when determining what weight to give
the affidavit.   I have given no weight to Mr. Washington's statements regarding the mortgage
industry in general and the alleged practices of the bank which are not based on his personal
knowledge or not relevant to the bank's actions in this case.

never given notice of a right to rescind the loan at any time and that he did not understand the full

terms of the loan or the fees for obtaining the loan.   He does not dispute that he and his wife

received a HUD settlement statement.   In his complaint he avers, however, that he and his wife

were charged $50 for a municipal lien certificate that he alleges costs only $25.   He also alleges

that he made a demand for the remaining $12,000 of the loan proceeds, a fact which the bank

disputes.   Mr. Washington alleges that the bank's failure to disburse the remaining proceeds is an

unfair and deceptive business practice.[5]

## Discussion

Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials

on file, and any affidavits show that there is no genuine issue of a material fact and that the movant

is entitled to judgment as a matter of law."   Fed. R. Civ. P. 65(c), made applicable by Fed. R.

Bankr. P. 7056.   A "genuine" issue is one supported by such evidence that "a reasonable jury,

drawing favorable inferences," could resolve it in favor of the nonmoving party.   *Triangle*

*Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (quoting *Smith v. F.W. Morse &*

*Co., Inc.*, 76 F.3d 413, 427 (1st Cir. 1996)).   "Material" means that a disputed fact has "the

potential to change the outcome of the suit" under the governing law if the dispute is resolved in

favor of the nonmovant.   *McCarthy v. Northwest Airlines, Inc.* 56 F.3d 313, 314-15 (1st Cir.

1995).   The moving party bears the initial responsibility of informing the court of the basis for its

---

[5] The debtor does not reference Mass. Gen. Laws ch. 93A in his complaint nor is there any
indication that a demand letter required by that statute was sent to the bank.   Mass. Gen. Laws ch.
93A, § 9.   *In re Schwartz*, 2001 WL 1331963 at *3 (Bankr. D. Mass. Apr. 7, 2011).

5

motion, and "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

TILA and the MCCCDA Violations

Mr. Washington seeks to rescind his loan transaction with the bank pursuant to TILA and the MCCCDA. Neither TILA's nor MCCCDA's rescission sections, however, apply to a "residential mortgage transaction," which both statutes define as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(w); Mass. Gen. Laws ch. 140D, § 1. Mr. Washington does not dispute that the loan proceeds were used for the construction of his residence; in fact, he avers the same in his complaint. Consequently he has no right of rescission under TILA or MCCDA.

It appears from the bank's loan commitment letter of November 10, 2006 that a portion of the $536,000 loan proceeds was used to pay off "an existing Land Loan" with the bank and thus some portion of the proceeds was used to refinance a prior loan. That fact, however, does not bring the loan at issue outside the definition of "residential mortgage transaction." In *Infante v. Bank of America Corp.*, 680 F. Supp.2d 1298, 1306 -07 (S.D. Fla. 2009), a case in which the borrower had used loan proceeds to refinance a mortgage and construct a house, the court noted that while TILA does not address multi-purpose loans the Federal Reserve Board's Official Staff

6

Interpretations do.   As the *Infante* court noted, that interpretation, which is binding "unless

demonstrably irrational," provides:

> [a] transaction meets the definition [of residential mortgage transaction] of this
> section if *any part of the loan proceeds* will be used to finance the acquisition or
> initial construction of the consumer's principal dwelling. For example, a
> transaction to finance the initial construction of the consumer's principal dwelling
> is a residential mortgage transaction even if a portion of the funds will be disbursed
> directly to the consumer or used to satisfy a loan for the purchase of the land on
> which the dwelling will be built.

12 C.F.R. pt. 226, Supp. I, Subpart A, § 226.2(a)(24)–6 (emphasis added).   *See Infante*, 680 F.

Supp.2d at 1307.

Mr. Washington also argues that each disbursement of construction loan proceeds and the

loan's conversion from a construction loan to a permanent loan constituted new loans for which

new disclosures were required.   But Regulation Z, 12. C.F.R. Pt. 226, which was promulgated

pursuant to § 105 of TILA, 15 U.S.C. § 1604, provides "[a] refinancing occurs when an existing

obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken

by the same consumer.   A refinancing is a new transaction requiring new disclosures to the

consumer."   12 C.F.R. § 226.20(a).   The relevant MCCCDA regulation, 209 Mass. Code Regs.

§ 32.20, contains identical language.   In this case there is no evidence that the original loan was

ever satisfied and replaced by a new loan.   In fact both the affidavits of Ms. Moran and Mr.

Washington suggest just the opposite occurred:   the loan changed from a construction loan to a

permanent one without any action on the part of the bank or the debtor.   The loan's conversion

from construction to permanent status is not a refinancing.   *Jacob v. Home Sav. and Loan Co. of

Youngstown, Ohio,* 679 F. Supp.2d 837, 841 (N.D. Ohio 2010).

As added support for the inapplicability of new disclosure requirements, Regulation Z also

provides that "[a] series of advances under an agreement to extend credit up to a certain amount

may be considered as one transaction," and "[w]hen a multiple-advance loan to finance the

construction of a dwelling may be permanently financed by the same creditor, the construction

phase and the permanent phase may be treated as either one transaction or more than one

transaction." 12 C.F.R. § 226.17(c)(6).   Thus the bank was entitled to design its

construction/permanent loan product as a single transaction and avoid the necessity of multiple

disclosures.   *See Jacob* 679 F. Supp.2d at 841.

As an additional basis for rescission, Mr. Washington asserts that the bank's initial

disclosure violated TILA and the MCCCDA because he has not received the final $12,000 of loan

proceeds and therefore that amount should not have been included in calculating the fees and

interest charged by the bank.   By this reasoning no construction loan providing for future

disbursements based on agreed upon benchmarks could ever comply with TILA or the MCCCDA.

The loan documents make clear that at the closing the total loan proceeds of $536,000 were

borrowed and began accruing interest.   The fact that the parties agreed that certain loan proceeds

would not immediately be disbursed does not alter the fact that all the proceeds were borrowed.

As to Mr. Washington's allegation that the bank overcharged him for the municipal lien

certificate when the loan was originated, he has not introduced any evidence to support his

allegation.   In fact, the bank introduced a notice from the Town of Lunenburg evidencing that

well before Mr. Washington's loan the cost of municipal lien certificates on property such as his

had risen from $25 to $50.

Unfair and Deceptive Practices

Mr. Washington alleges in his affidavit that the bank's conduct was unfair and deceptive,

the terminology of Mass. Gen. Laws ch. 93A, although his complaint lacks any reference to Mass.

8

Gen. Laws ch. 93A and fails to state whether a demand letter was sent to the bank as required by

the statute.   Thus he has not stated a claim under the statute.   If Mr. Washington is alleging the

bank is liable for the common law tort of deceit, he has failed to requisite elements which have

been succinctly states as "the misrepresentation of an existing material fact, made with knowledge

of the falsity of the misrepresentation or with recklessness, intending that the plaintiff rely and

with resulting damage from the reliance."   *Warner-Lambert Co. v. Execuquest Corp.*, 427 Mass.

46, 48, 691 N.E.2d 545, 547 (1998) (quoting J.R. Nolan & L.J. Sartorio, Tort Law § 141 (2d

ed.1989).   Mr. Washington argues that at the loan's inception he did not understand what he was

signing and that he was rushed into signing the documents.   He argues that the bank knew or

should have known that he could neither understand the agreements nor perform under them as he

had no experience as a contractor.   According to Mr. Washington, the bank should have explained

the risks and likelihood of cost overruns on new construction overseen by a homeowner rather than

a licensed construction supervisor.

These allegations are insufficient to establish a cause of action for deceit but even if they

were Mr. Washington's allegations cannot be credited as asserting material disputed facts.   First,

despite his professed inexperience supervising construction, his home, where he and his family

reside, is 99% complete.   Furthermore, absent a fiduciary relationship or joint venture, the bank

owed Mr. Washington no duty to protect him from himself.   *Shawmut Bank, N.A. v. Wayman*, 34

Mass. App. Ct. 20, 24-25, 606 N.Ed.2d 925, 927-28 (1993).   "Lenders normally do not owe

borrowers fiduciary duties.   A lender can, however, assume a duty of care to the borrower through

contractual terms.   A fiduciary relationship also can arise if a lender both knows that a borrower is

placing her trust in it and accepts that trust."   *Pimental v. Wachovia Mortg. Corp.*, 411 F. Supp.2d

32, 39-40 (D. Mass. 2006) (internal citations omitted).   Mr. Washington has offered nothing to

establish or even suggest that such a special relationship existed.   On the contrary, the loan

documents and affidavits suggest that this was a garden-variety arm's length construction loan.

Therefore, even if there existed a borrower's right to rescind a loan because of unfair and deceptive

practices by a lender, Mr. Washington has not demonstrated he is entitled to assert such a right and

seek rescission of his loan on this basis.

Mr. Washington also alleges that the bank (although he does not say by whom) assured him

that the bank would refinance his loan.   He also acknowledges in his affidavit, however, that he

did not understand the difference between having the construction loan made permanent and

actually refinancing the loan.   There is nothing in TILA or the MCCCDA that permits Mr.

Washington to rescind a loan based upon such allegations, however, nor does the complaint, to the

extent it attempts to aver fraud, meet the requirements imposed by Fed. R. Civ. P. 9(b), made

applicable by Fed. R. Bankr. P. 7009.[6]

Mr. Washington alleges that the bank's refusal to disburse the final $12,000 of construction

funds is unfair and deceptive.   But even if the debtor could show he satisfied the statutory

---

[6] Mr. Washington's affidavit attempts to raise the specter of fraud that is not pled in the complaint.
It is not my responsibility, however, to put together a cause of action for Mr. Washington.

> This Court should not, and cannot, be required to sift through multifarious
> documents and testimony in an effort to congregate those facts which are necessary
> to establish a party's action or defense. Rather, it is the duty of the litigants to
> present their evidence in a manner which logically, systematically, and efficiently
> leads to the conclusion sought. If the evidence does not clearly establish the basis,
> upon which the Court can, in an independent review, determine liability, the
> litigants have effectively failed to meet their burden of proof with regard to their
> respective position in the case. As a result, judgment cannot be granted to the extent
> the elements of an action or defense are not clearly demonstrable in the record.

*McGraw v. Allen (In re Bell & Beckwith)*, 64 B.R. 620, 635 (Bankr. N.D. Ohio 1986).

prerequisites for bringing an action under Chapter 93A (which he has not), and even if he had

made demand on the bank for the remaining $12,000, the loan documents clearly establish that the

bank was entitled to withhold construction funds pending completion of designated benchmarks

and ultimately the entire project.

### Conclusion

There are no material facts in dispute.   Mr. Washington is simply not entitled to rescind

his loan with Clinton Savings Bank[7] and therefore summary judgment will enter for the bank on

all counts of the complaint.   Because Mr. Washington cannot rescind his loan, his fifth amended

plan cannot be confirmed and thus his motion to amend the plan will be denied.   Similarly on the

record before me, Mr. Washington has offered no evidence to substantiate his objection to the

bank's proof of claim and his objection to the proof of claim must be overruled.

Previously, any action on the bank's motion for relief from stay had been stayed because

Mr. Washington's defense to that motion was based upon his assertion that he had the right to

rescind the loan transaction.   It is now appropriate for relief from stay to enter in favor of the bank.

Finally, the parties had entered into a stipulation whereby Mr. Washington was to make

monthly payments on his loan with the bank to the Chapter 13 trustee to be held by her pending

resolution of this adversary proceeding.   In light of my rulings here, the Chapter 13 trustee shall

pay to the bank the escrowed funds in accordance with the stipulation.

---

[7] Because Mr. Washington is not entitled to rescind the loan, I need not reach the issue of whether
he would be required to tender the proceeds he has received from the bank as a condition to
rescission.

Separate orders consistent with this memorandum will enter.

At Worcester, Massachusetts this 29th day of August, 2011.

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:   Gail Balser
Attleboro, MA
for Aaron Washington


Jon Kirkland
Chelmsford, MA
for Clinton Savings Bank

12